UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) ) ) | |
| v. | ) ) | Case No. 3:22-CR-00282 |
| GLEN CASADA and | ) | District Judge Eli J. Richardson |
| CADE COTHREN | ) ) | Magistrate Judge Alistair Newbern |
| Defendants. | ) ) ) | |

### DEFENDANT CADE COTHREN'S MOTION FOR ISSUANCE OF SUBPOENAS *DUCES TECUM* AND MEMORANDUM IN SUPPORT

Comes now Defendant Cade Cothren, by and through undersigned counsel, and pursuant to Rule 17(c) of the Federal Rules of Criminal Procedure, and respectfully moves this Court for an Order authorizing the issuance of subpoenas *duces tecum* to Verizon Communications, Inc. ("Verizon") and Confide, Inc. ("Confide") for pretrial production of documents to be used in Mr. Cothren's defense at trial.

Defense counsel requests that the subpoena direct the documents to be delivered to undersigned counsel or to the Court no later than June 30, 2023, and, if delivered to the Court, that the Courtroom Deputy notify undersigned counsel when they are received so that defense counsel may obtain the original production upon request.

In support of this Motion, Mr. Cothren would show the following:

### Background

The August 22, 2022 Indictment of Mr. Cothren (Doc. No. 3) arises from the operation of a small business, Phoenix Solutions, LLC ("Phoenix Solutions"), and its participation in the provision of approximately $51,947 in constituent mail, postage, and related services to various

members of the Tennessee House of Representatives. The Indictment does not allege any financial loss to the state of Tennessee. The trial of this case is scheduled to begin on October 3, 2023 (Doc. No. 26).

In the Indictment, the government alleges that Mr. Cothren, along with former Representative Glen Casada and another former state representative, devised a scheme to obtain state approval of Phoenix Solutions as a vendor to provide constituent mail services to members of the Tennessee General Assembly. *See* Doc. No. 3. Paragraph 12 states, "The Tennessee House Speaker's Office had the authority to approve or deny a vendor[1] to provide services or any mailing funded by the Mailer Program." *Id.* at ¶ 12. The government also avers that Mr. Cothren, Mr. Casada, and the other state representative "conceal[ed] Cothren's involvement in Phoenix Solutions from the State and members of the Tennessee General Assembly," due to their "expectation that Phoenix Solutions would not be approved by the Tennessee House Speaker's Office…if Cothren's involvement was disclosed." *Id.* at ¶ 24. Based on documents produced by the government, Speaker of the Tennessee House of Representatives Cameron Sexton has asserted that he would not have approved Phoenix Solutions or Cade Cothren as a vendor because Mr. Cothren resigned under a cloud of suspicion in 2019. Speaker Sexton has also claimed that Mr. Cothren knew that he had no desire to do business with him. Further, Speaker Sexton has expressed his belief that had he known of Mr. Cothren's involvement in Phoenix Solutions, he would not have thought it to be a reputable company that fulfilled its obligations to House members.

While Speaker Sexton may insist now, publicly, that he would not have approved Mr. Cothren as a vendor, and that Mr. Cothren was somehow aware of Speaker Sexton's subjective

---

[1] The absence of a vendor approval process will be addressed through a separate motion.

opinion on the matter, the Verizon telephone records and Confide messaging records—in addition to the text messages Mr. Cothren already has in his possession—will establish otherwise.

In fact, after his resignation, Mr. Cothren remained heavily engaged with Speaker Sexton, who relied on Mr. Cothren's expertise, especially during the 2019 special session race for the next Speaker of the Tennessee House of Representatives after former Speaker Glen Casada's resignation.

Mr. Cothren was one of then-Representative Sexton's most consistent confidants during his race for Speaker. <u>The requested telephone and messaging records should show hundreds of telephone calls and corresponding messages between Mr. Cothren and Speaker Sexton during that critical time period and beyond.</u>

<u>The records from Confide,[2] specifically, will show that Speaker Sexton was also regularly communicating with Mr. Cothren and other state employees on the encrypted messaging application during the relevant time period in the Indictment.</u>

Additionally, the requested records will show that Speaker Sexton was actively reaching out to state officials, state employees, as well as third-parties in an attempt to secure Mr. Cothren a job as a lobbyist as well as other opportunities. These communications are integral to Mr. Cothren's defense in this matter because the government's case appears to rely—heavily—on its theory that Mr. Cothren's reputation was so tarnished after his resignation that Speaker Sexton was adamantly opposed to associating or working with him at all, even on administrative matters.

---

[2] On its website, Confide describes itself as: "Confide is a confidential messenger. It allows you to have honest, unfiltered, off-the-record conversations. It allows you to speak freely, without the risk of what you say being forwarded on or permanently stored, just like when you're talking in person." CONFIDE, https://getconfide.com/faq (last visited May 24, 2023).

The Indictment alleges the Speaker would not have approved Mr. Cothren as a vendor if he had known about his association with Phoenix Solutions; however, Mr. Cothren himself was one of Speaker Sexton's most trusted advisors even after Mr. Cothren's resignation. To corroborate these facts, Speaker Sexton's Verizon and Confide records are necessary and critical to Mr. Cothren's defense. For these reasons, Mr. Cothren requests this Court enter an Order allowing him to procure the Verizon and Confide records as described in more detail herein.

Verizon and Confide are the only comprehensive sources for the totality of the information sought–Speaker Sexton's communications with Mr. Cothren as well as his communications with others about Mr. Cothren. State employees are not given government cell phones, so any communication outside legislative office phones and/or office conferences are conducted through personal cell phones. Verizon is Speaker Sexton's cell phone carrier via the number (931) XXX-XXXX.[3] Verizon accepts valid legal demands for records addressed to Verizon and sent via facsimile (1-888-667-0028 for subpoena; 1-888-667-0026 for Court Orders) to the Verizon Security Assistance Team ("VSAT"). Confide accepts valid legal demands for service through Confide's agent for service of process: Teltech Systems, Inc., CT Corporation System, 28 Liberty Street, New York, New York 10005.

Thus, Mr. Cothren moves this Court for an Order authorizing the issuance of the following subpoenas *duces tecum* pursuant to Rule 17(c), as follows:

1. Entity to be subpoenaed: Verizon Communications, Inc., Attention: VSAT, via facsimile: 1-888-667-0028;

---

[3] While personal telephone numbers are not covered under the Notice Regarding Privacy and Public Access to Electronic Case Files, out of an abundance of caution, given Speaker Sexton's high-profile position, undersigned counsel has redacted Speaker Sexton's telephone number from this Motion and, by separate Motion, seeks to file it under seal.

4

a. Documents to be produced: All detailed records, including historical toll records, depicting any and all incoming and outgoing text messages and telephone calls, the duration of said calls, including attempted telephone calls, voicemails, any other available data, and billing records, for the time period beginning on February 1, 2019 through January 31, 2020 for the following telephone number: (931) XXX-XXXX, along with a completed Affidavit of Custodian of Records;

b. Deadline and place for production: On or before June 30, 2023, to the office of Sherwood Boutique Litigation, PLC, or, in the alternative, this Court.

2. Entity to be subpoenaed: Confide, Inc., via certified mail to Confide's agent: Teltech Systems, Inc., CT Corporation Systems, 28 Liberty Street, New York, New York 10005.

    a. Documents to be produced: All detailed records, including the following: subscriber information to include full legal name, date and time of account creation, phone number, home address, and email; all contacts associated with this account; data usage for this account; communication history including any and all incoming and outgoing messages with dates/times and the contents of such messages, if available; any other available information and billing records, for the time period beginning on February 1, 2019 through January 31, 2020 associated with the name Cameron Sexton and/or the phone number (931) XXX-XXXX, along with a completed Affidavit of Custodian Records.

    b. Deadline and place for production: On or before June 30, 2023, to the office of Sherwood Boutique Litigation, PLC, or, in the alternative, this Court.

As discussed below, this information is relevant to, and likely admissible in, Mr. Cothren's impending trial. Speaker Sexton's telephone and messaging records for this limited time period contain information directly related to the charges in the Indictment and are essential to Mr. Cothren's defense and preparation for trial. These records are anticipated to lead to other trial evidence, some of which may also need to be subpoenaed.

## **Legal Standard**

The issuance of subpoenas is governed by Federal Rule of Criminal Procedure 17, which provides, in part:

> A subpoena may order the witness to produce any books, papers, documents, data, or other objects the subpoena designates. The court may direct the witness to produce the designated items in court before trial or before they are to be offered in evidence. When the items arrive, the court may permit the parties and their attorneys to inspect all or part of them.

Fed. R. Crim. P. 17(c)(1).

Rule 17(c) "implements a criminal defendant's constitutional right 'to have compulsory process for obtaining witnesses in his favor' by providing a means to subpoena witnesses and documents for a trial or a hearing." *United States v. Llanez-Garcia*, 735 F.3d 483, 493 (6th Cir. 2013) (*citing* U.S. Constitution Amendment VI).

In *U.S. v. Nixon,* the Supreme Court set forth a four-part test that a defendant must satisfy to compel production of documents under Rule 17(c). *See United States v. Nixon,* 418 U.S. 683, 697-701 (1974). The defendant must show:

> (1) that the documents are evidentiary and relevant; (2) that they are not otherwise procurable reasonably in advance of trial by exercise of due diligence; (3) that the party cannot properly prepare for trial without such production and inspection in advance of trial and that the failure to obtain such inspection may tend unreasonably to delay the trial; and (4) that the application is made in good faith and is not intended as a general 'fishing expedition.'

*Id.* at 699-700. *See also United States v. Warren,* 782 F. App'x 466, 472 (6th Cir. 2019).

Mr. Cothren will address each prong in turn.

**1.     The Records Requested Are Evidentiary And Relevant.**

**A.     The requested records have significant evidentiary value.**

The first inquiry under the first *Nixon* prong is whether the documents sought have some valid potential evidentiary use other than for impeachment. *Nixon*, 418 U.S. at 701.[4]  The records being requested here are admissible as exceptions to hearsay under the Federal Rules of Evidence Rule 803(6) as a record of a regularly conducted activity. The telephone and messaging records will be admitted for substantive and impeachment purposes to directly counteract the government's theory that Phoenix Solutions would not have been approved as a vendor had the Speaker's Office known of Mr. Cothren's association with the business. *See United States v. Young*, No. 03-20400 BV, 2004 U.S. Dist. LEXIS 6301, at *13-14 (W.D. Tenn. Mar. 4, 2004) (finding movants met the evidentiary standard because all the documents they sought appeared to be admissible as business records and, for example, could be used for substantive defense matters, or even simply to refresh the memories of witnesses). Given the personal knowledge Speaker Sexton possesses, he is not only a potential government witness but also a crucial defense witness.

While the telephone and messaging records requested should easily meet the evidentiary requirements under the strictest interpretation of this prong, it is important to point out that the Supreme Court noted in *Nixon,* when examining the first prong, that a lower evidentiary standard

---

[4] Generally, the need for evidence to impeach witnesses is insufficient to require its production in advance of trial. *United States v. Nixon*, 418 U.S. 683, 701-02, 94 S. Ct. 3090, 3104 (1974) (citing *United States* v. *Carter*, 15 F.R.D. 367, 371 (DC 1954)). In *Nixon,* however, the court found that since there were other valid potential evidentiary uses for the same material, and because analysis of the requested materials would be lengthy to review, the use of some materials for impeachment purposes was not fatal to the defendant's Rule 17(c) motion. The information sought by Mr. Cothren is substantive evidence in addition to impeachment evidence.

may apply, or "does not apply in its full vigor," in "the more unusual situation…" in which a subpoena is directed "to a third-party rather than to government prosecutors." *See Nixon* 418 U.S. 683 at n.12 (citing *United States v. Mitchell*, 377 F. Supp. 1326 (1974)).

### B. The requested records are indisputably relevant.

Relevant evidence is evidence having "any tendency to make a fact more or less probable than it would be without the evidence; and the fact is of consequence in determining the action." Fed. R. Evid. 401. Because of the difficulties inherent in establishing the admissibility of certain evidence at such an early stage, the showing for *Nixon* purposes need not be as detailed as it would to secure admission at trial, and courts should find the evidentiary requirement satisfied if the documents are "<u>arguably</u> relevant and admissible." *United States v. Libby*, 432 F. Supp. 2d 26, 31 (D.D.C. 2006) (emphasis added).

"In *United States v. Wittig*, 250 F.R.D. 548, 550-51 (D. Kan. 2008), a defendant issued a Rule 17(c) subpoena to his former employer seeking evidence regarding his former employer's role in the criminal investigation that led to his indictment." *United States v. Raheja,* No. 1:19-cr-559, 2021 U.S. Dist. LEXIS 23541, at *8 (N.D. Ohio Feb. 8, 2021). "In quashing the subpoena on relevance grounds, the court noted that the 'documents defendant seeks do not relate to whether or not he committed any of these or other acts alleged in the [indictment].'" *Id.* (quoting *Witting,* 250 F.R.D. at 553).

That is not the case here. The requested records relate directly to the charges in the Indictment. (Doc. No. 3). All of the records Mr. Cothren seeks from Verizon and Confide contain critical communications between Speaker Sexton, a crucial witness, and Mr. Cothren and Speaker Sexton and others regarding Mr. Cothren dating back to Mr. Cothren's time in the legislature, the immediate months thereafter, and during the time Phoenix Solutions was in operation. Mr. Cothren

has identified key allegations in the Indictment this information is sought to challenge. (Doc. No. 3 at ¶¶ 9, 21, 24).

These telephone and messaging records bear directly on the Indictment's allegations, including the government's contention that: "[i]t was a further purpose of the conspiracy to conceal from the State and its citizens COTHREN's involvement in Phoenix Solutions…due to the Defendants' and Individual 4's expectations that Phoenix Solutions would not be approved by the State…if COTHREN's operational involvement and financial interests…were disclosed." (Doc. 3 at ¶ 21); and many others. <u>In sum, records of repeated and regular telephone calls and messages between Mr. Cothren and others with Speaker of the House Cameron Sexton—the leader who claims he had ultimate authority over the Mailer Program—strongly suggest a high degree of trust, reliance, and confidence between these two individuals after Mr. Cothren's resignation and are fundamentally relevant to this case.</u>

**2.   The Documents Requested Are Not Otherwise Procurable Reasonably In Advance Of Trial By Exercise Of Due Diligence.**

Verizon and Confide do not voluntarily turn over third party records upon request. Absent a subpoena, the records for the phone number requested cannot be obtained from Verizon or Confide or via a Public Records Act (T.C.A. § 10-7-501, *et seq.*) request because state employees are not given government cell phones.

Additionally, there is no indication that the government has these records, leaving Verizon and Confide as likely the only sources from which to obtain them. Thus, the records are not reasonably procurable in advance of trial without these subpoenas.

Although Mr. Cothren's own telephone records contain *some* records of his communications with Speaker Sexton, Mr. Cothren does not have the totality of the information

sought and the records will not contain Speaker Sexton's communication with third-parties or the information in Speaker Sexton's Confide messaging records.

3. **Mr. Cothren Cannot Properly Prepare For Trial Without Production And Inspection Of These Requested Documents And Failure To Obtain These Documents In Advance of Trial Will Unreasonably Delay The Trial.**

As explained *supra*, the documents requested are directly relevant to charges in the Indictment and, thus, are essential to Mr. Cothren's defense. The records of Speaker Sexton's ongoing conversations with, and attempts to secure employment for, Mr. Cothren, will significantly undercut the government's theory that Mr. Cothren was *persona non grata* to the Speaker, his office and other staff, and members of the General Assembly. Without these documents, Mr. Cothren's ability to prepare his defense will be greatly hampered.

In another Sixth Circuit case, *United States v. Young*, the Western District of Tennessee found that similarly situated defendants seeking a third-party subpoena satisfied the third *Nixon* factor:

> Young needs these items in order to properly prepare his arguments and defenses for trial. They are important to his defense and, as alleged, Young's trial preparation will be hampered if they are not obtained. Should Young be forced to wait until trial for disclosure, the review of the items would likely be lengthy and would likely unreasonably delay trial. Belt describes the material in the NCAA files as voluminous. (Id. at P6.) He indicated that the recorded statements of Milton Kirk alone are approximately twenty-four hours in length. The NCAA memorandum of meetings with Fulmer provided to Young by the government as part of its discovery is not necessarily an adequate substitute for all the memoranda and notes of interviews in the possession of the NCAA and of Fulmer.

*United States v. Young,* No. 03-20400 BV, 2004 U.S. Dist. LEXIS 6301, at *14-15 (W.D. Tenn. Mar. 4, 2004).

Mr. Cothren is requesting records from a focused date range—a period of one year—as the communications between Speaker Sexton and Mr. Cothren, and Speaker Sexton and others regarding Mr. Cothren, were extensive and extend throughout and beyond the relevant time periods

referenced in the Indictment. If Verizon and Confide are not required to produce the records requested until trial, an unreasonable delay would undoubtedly result to permit defense counsel to pore over one year's worth of telephone and messaging records. This Court should find Mr. Cothren's request meets the third prong of *Nixon*.

**4. This Application Is Made In Good Faith And Is Not A "Fishing Expedition."**

The Indictment of Mr. Cothren is no small matter. Mr. Cothren is cognizant that requesting the telephone and messaging records of the Speaker of the Tennessee House of Representatives is a weighty task but one that is necessary. Mr. Cothren is the one who stands accused of misappropriating federal funds and abusing the trust of the citizens of Tennessee. Mr. Cothren's defense will require him to present–and the jury to grasp–evidence unveiling the inner workings of the Speaker's Office and legislative relationships, among other things, and the telephone and messaging records requested herein are directly relevant and critical to his defenses against the government's accusations.

Mr. Cothren is aware that in examining this factor "[c]ourts have repeatedly emphasized that fishing expeditions should be prevented by requiring specificity." *See United States v. Ihsaan Al-Amin*, No. 1:12-CR-50, 2013 U.S. Dist. LEXIS 104177, at *17 (E.D. Tenn. July 25, 2013) (*citing United States v. Collins,* No. 11-CR-00471-DLJ (PSG), 2013 U.S. Dist. LEXIS 36361, 2013 WL 1089908, at *4 (N.D.Cal. Mar. 15, 2013)); *United States v. Shanahan,* No. S1-4:07 CR 175 JCH, 2008 U.S. Dist. LEXIS 16125, 2008 WL 619213, at *4 (E.D. Mo. Mar. 3, 2008). Courts have found that "a request will usually be sufficiently specific where it limits documents to a reasonable period of time and states with reasonable precision the subjects to which the documents relate." *Shanahan*, 2008 WL 619213, at *4 (E.D. Mo. 2008) (denying subpoena because

documents did not relate to guilt as to the charges) (citing *United States v. RW Prof'l Leasing Servs. Corp.*, 228 F.R.D. 158, 162 (E.D.N.Y. 2005)).

The request made here is specific and limited. Mr. Cothren simply requests the telephone logs and messaging data of the singular number provided for a one-year period. These requests are made with much more than "[t]he mere hope of discovering favorable evidence." Mr. Cothren was a party to hundreds of conversations with Speaker Sexton in the relevant time period, and Speaker Sexton now apparently claims that Mr. Cothren was unwelcomed and untrusted by the Speaker and his office. Mr. Cothren is aware, from conversations with Speaker Sexton and others, that Speaker Sexton had several conversations with multiple specific individuals regarding future employment for Mr. Cothren as a lobbyist. These telephone and messaging records are being requested to show those specific facts which, as detailed herein, are essential to his defense.

In sum, this is not a fishing expedition, and this Court should allow the issuance of these subpoenas to compel Verizon's and Confide's compliance with the same if necessary.

## Conclusion

For all the above reasons, Mr. Cothren respectfully requests that this Court enter an Order, pursuant to Rule 17(c), directing that subpoenas *duces tecum* be issued to Verizon and to Confide via the information provided and for the documents and records described on pages 4 and 5, *infra*. Mr. Cothren further requests that Verizon and Confide be required to provide the responsive documents, along with a completed Affidavit of Custodian of Records, prior to the anticipated trial and no later than June 30, 2023.

Mr. Cothren further asks that the requested documents be provided either to undersigned counsel or to the Court.

12
Case 3:22-cr-00282   Document 46   Filed 05/25/23   Page 12 of 13 PageID #: 169

Respectfully Submitted,

**Sherwood Boutique Litigation, PLC**

/s/ Cynthia A. Sherwood
Cynthia A. Sherwood, #20911
Austin M. Correll, #39561
414 Union Street
Suite 1110
Nashville, TN 37219
T: 615-873-5670
F: 615-900-2312
cynthia@sherwoodlitigation.com
austin@sherwoodlitigation.com
*Counsel for Defendant Cade Cothren*

**Barnes & Thornburg LLP**

/s/ Joy Boyd Longnecker
Joy Boyd Longnecker, #29627
827 19th Avenue South
Suite 930
Nashville, TN 37203-3447
T: 615-925-9506
Joy.Longnecker@btlaw.com
*Counsel for Defendant Cade Cothren*

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing was electronically filed with the Clerk on May 25, 2023, and service was made upon all persons registered in that case via CM/ECF and/or by email.

/s/ Cynthia A. Sherwood