# UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

|  |  |  |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | **Case No. 3:22-CR-00282** |
| **GLEN CASADA and** | ) | **District Judge Eli J. Richardson** |
| **CADE COTHREN,** | ) | **Magistrate Judge Alistair Newbern** |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

### DEFENDANT CADE COTHREN'S MOTION TO STRIKE SURPLUSAGE FROM THE INDICTMENT AND INCORPORATED MEMORANDUM OF LAW

Defendant Cade Cothren, by and through undersigned counsel, and pursuant to Federal Rule of Criminal Procedure 7(d), respectfully moves the Court for an Order striking irrelevant and inflammatory surplus language from the Indictment. In support of this Motion, Cothren states as follows:

### Introduction

The Indictment asserts numerous inflammatory allegations that have no bearing on the charges against Cothren and serve no purpose other than to publicly attack his character, prejudice his right to a fair trial, and invite a jury to convict him on a propensity basis. First, Paragraphs 7 and 8 reference ethical rules that are irrelevant and prejudicial surplusage. Doc. No. 3 ("Indictment") at ¶¶ 7, 8. There, "the government is impermissibly attempting to base criminal liability on ethical rules that lack the force of law." *See United States v. Terry*, No.1:10CR390, 2011 U.S. Dist. LEXIS 57288, *15 (N.D. Ohio May 26, 2011) (striking ethical rules from the Indictment charging a violation of 18 U.S.C. Section 1346).

Second, Paragraphs 23, 33, 34, 46, 49, 50, and 51 of the Indictment all contain superfluous allegations regarding the <u>privately funded campaign activities</u> and work performed by Cothren's business, Phoenix Solutions, LLC ("Phoenix Solutions"), on behalf of Political Party 1's caucus members. These allegations are likewise irrelevant and prejudicial surplusage. In direct contrast to this campaign-focused work, the criminal charges against Cothren all arise from the purportedly <u>publicly funded non-campaign</u> activities and work performed by Phoenix Solutions, Company 1, and Company 2 in connection with the Tennessee House of Representatives' Postage and Printing Allowance.[1] *See generally,* Indictment.

## Argument

### I. Legal Standard.

An Indictment "must be a plain, concise, and definite written statement of the essential facts constituting the offense charged . . . ." Fed. R. Crim. P. 7(c)(1). *See United States v. Blandford*, 33 F.3d 685, 704 (6th Cir. 1994) (quoting *United States v. Piccolo*, 723 F.2d 1234, 1238 (6th Cir. 1983) (en banc) (noting the Sixth Amendment requires an indictment to "inform the defendant of 'the nature and cause of the accusation.'")). As such, Rule 7(d) is "a means of protecting the defendant against immaterial or irrelevant allegations in an indictment. . . ." Fed. R. Crim. P. 7, 1944 Advisory Committee Notes. This essential protection safeguards and preserves a defendant's constitutional right to due process. U.S. CONST. amend. V. "Rule 7(d) of the Federal Rules of Criminal Procedure makes the striking of surplusage permissive but not mandatory." *Terry*, 2011 U.S. Dist. LEXIS 57288, at *17 (citing *United States v. Kemper*, 503 F.2d 327, 329 (6th Cir. 1974)).

---

[1] This allowance is artfully — but inaccurately — referred to in the Indictment as the "Mailer Program." *See* Memorandum in Support of Motion to Dismiss.

Striking surplusage is proper "when an indictment contains nonessential allegations that could prejudicially impress the jurors." *United States v. Kemper*, 503 F.2d 327, 329 (6th Cir. 1974). Accordingly, upon a defendant's motion, courts "may strike surplusage from the indictment . . ." Fed. R. Crim. P. 7(d). A motion to strike surplusage should be granted where it is clear that the challenged language is irrelevant and prejudicial. *United States v. Moss*, 9 F.3d 545, 550 (6th Cir. 1993). Language in an indictment is irrelevant when it is "unnecessary to prove an offense." *United States v. Huddleston*, No. 3:16-CR-61, 2017 U.S. Dist. LEXIS 122415, at *18 (E.D. Tenn. Aug. 3, 2017) (internal citations omitted). An indictment's language is prejudicial if it serves only to "[1] inflame the jury, [2] confuse the issues, [3] and blur the elements necessary for conviction." *Id*. Because the Indictment's allegations related to the ethical rules as well as Phoenix Solutions and Cothren's campaign work for Political Party 1's caucus members are (1) irrelevant, (2) immaterial, (3) blur and confuse the issues, (4) unnecessary, and (5) inflammatory, they should be stricken from the Indictment.

## II. The Indictment's Surplusage Is Irrelevant and Prejudicial and Should Be Stricken.

### A. The allegations related to the ethical rules of the General Assembly should be stricken.

The Indictment impermissibly attempts to give ethical rules the force of law by quoting the General Assembly's Rules of Order. Specifically, Paragraphs 7 and 8 should be stricken. Those paragraphs allege:

> 7. As Representatives, CASADA and Individual 4 each held an office of trust under the Constitution of the State of Tennessee and owed a fiduciary duty to provide honest services to the State of Tennessee and owed a fiduciary duty to provide honest services to the State and its citizens. As members of the State of Tennessee's 111th General Assembly, on or about January 8, 2019, CASADA and Individual 4 each swore that they would "not propose or assent to any bill, vote or resolution, which shall appear to me [sic] injurious to the people, or

consent to any act or thing, whatever, that shall have a tendency to lessen or abridge their rights and privileges."

8. The Tennessee House adopted Permanent Rules of Order for the 111th General Assembly. The Rules included an Ethics Code, which stated that "Representatives should avoid conduct that even appears to violate the trust that the people have placed in them." Conduct violating the Ethics Code included: "Actions that destroy a representative's independence of judgment as a legislator", "Actions that are an abuse of the representative's official position, including, but not limited to, placing undue influence upon any state department, agency, court or governmental subdivision"; and "Actions that are a personal interest in conflict with the proper discharge of the representative's duties." The Tennessee House adopted the Rules of Order under CASADA's name as Speaker, and, while he served in this role, CASADA was responsible for preserving them. As Speaker, CASADA was also responsible for appointing members of the House Ethics Committee.

Indictment at ¶¶ 7, 8.

These allegations are immaterial to the charged conduct and unfairly prejudicial. In *Terry*, the Indictment in which defendant was charged with honest services fraud partially quoted the Ohio Code of Judicial Conduct and certain Canons as grounds for that charge. *Terry*, 2011 U.S. Dist. LEXIS 57288, at *16. The defendant moved to strike this surplusage and argued that using the judicial code as the basis for criminal charges was prohibited by the code itself. *Id.* at *17. The *Terry* Court revered the Ohio Code of Judicial Conduct, which provides that:

The Code is designed to provide guidance to judges and candidates for judicial office and to provide a structure for regulating conduct through disciplinary agencies. It is not designed as a basis for civil liability or criminal prosecutions. Furthermore, the purpose of the Code would be subverted if the Code were invoked by lawyers for mere tactical advantage in a proceeding. (Ohio Code of Judicial Conduct, PREAMBLE).

*Id.* at *18. The Permanent Rules of Order – Ethics Code for the Tennessee General Assembly has a similar provision:

It is the purpose of this code to establish standards of conduct for the representatives, to authorize the House Ethics Committee to consider alleged violations of this code, and to authorize the House Ethics Committee to render

4

advisory opinions to the representatives. This code is in addition to <u>and separate from standards of conduct that may be required under state or federal law</u>.

Tennessee House of Representatives, Permanent Rules of Order, 111th General Assembly, at ¶ 82 (emphasis added). In *Terry*, though the Government argued that the "evidence that the defendant violated the judicial code is highly relevant to the issues of materiality and intent," the court found otherwise after deciding that the Ohio Code is not binding state law:

> Like the court in *Brumley*, this Court finds that the legal duty underlying a charge of honest services fraud must be rooted in state law. Having determined that a duty under state law is necessary under § 1346, the Court takes up the defendant's argument that Ohio's judicial code cannot supply that necessary duty.

*Terry*, 2011 U.S. Dist. LEXIS, at *21-22. Ultimately, the court concluded that "the judicial code does not have the force of law, cannot be used to support the finding of a legal duty under state law, and does not contain provisions that the government must properly prove at trial, it is non-essential." *Id.* at *28-29 (citing *United States v. Moss*, 9 F.3d 543, 550 (6th Cir. 1993)).

The same circumstances exist here. The General Assembly's Rules of Order do not have the force of law, cannot be used to support a finding of legal duty under state law, and do not contain any provision the government must prove at trial. Such language, therefore, is immaterial and prejudicial and should be stricken under Federal Rule of Criminal Procedure 7(d).

## B. <u>The allegations related to the caucus work should be stricken.</u>

The Indictment contains numerous irrelevant, unnecessary, and inflammatory allegations that go well beyond "the essential facts constituting" the offenses charged. Specifically, Paragraphs 23, 33, 34, 46, 49, 50, and 51 of the Indictment reference conduct, communications, and payments that occurred entirely in the context of Cothren's and Phoenix Solutions' <u>campaign</u> work for caucus members and, as such, these allegations constitute surplusage that is not only irrelevant but highly prejudicial, as well. Indictment at ¶¶ 23, 33, 34, 46, 49, 50, 51.

As explained at length in Cothren's contemporaneously filed Motion to Dismiss,[2] federal jurisdiction is only alleged to exist with respect to the latter conduct; it is not alleged to, and does not, exist with respect to the former. The inclusion of allegations pertaining to both categories of conduct will likely confuse jurors, blur the facts and elements needed for conviction/acquittal, and cause them to conflate and/or equate Cothren's campaign caucus activities with his separate and distinct (read: charged) conduct in the context of the Postage and Printing Allowance.

As explained herein, none of the government's extraneous allegations about Phoenix Solutions' campaign work has anything to do with the charges levied against Cothren for his non-campaign Postage and Printing Allowance activities. The inclusion of these wholly irrelevant facts in the Indictment serves no real purpose beyond improperly inflaming the jury and unfairly prejudicing Cothren's rights to due process and a fair trial.

Accordingly, the Court should strike this surplusage pursuant to Federal Rule of Criminal Procedure 7(d).

For these reasons, the following paragraphs should be stricken from the Indictment:[3]

23. The conspirators would and did tell others, including members of the Tennessee General Assembly, the House Speaker's Office, and the OLA, that Phoenix Solutions was run by an individual named "Matthew Phoenix." The conspirators claimed that Matthew Phoenix was an experienced political consultant who had worked for Consulting Firm 1, a real company based in Washington, D.C. In truth and in fact, COTHREN ran Phoenix Solutions and CASADA, COTHREN, and Individual 4 secretly profited from it. The conspirators knew that Matthew Phoenix was a fictitious person and was, in truth and in fact, COTHREN. The conspirators also knew that COTHREN had never worked for Consulting Firm 1.

33. On or about December 18, 2019, Individual 4 emailed COTHREN. Referencing a potential future conversation related to Phoenix Solutions with a Political

---

[2] Cothren adopts and incorporates his Memorandum in Support of Motion to Dismiss herein by reference.
[3] Emphasis added to denote verbiage that, on its face, refers to caucus and campaign and not Postage and Printing Allowance conduct.

Party 1 employee regarding **campaign mailers** for General Assembly incumbents, Individual 4 told COTHREN that he "may have to assume the role of Matthew again." COTHREN replied to Individual 4, "Matthew, reporting for duty!" and included a graphic interchange format (".gif") picture of a salute from Harrison Ford's character Han Solo in the movie Star Wars.

34. On or about December 20, 2019, CASADA texted COTHREN, "I think this is starting off well I'm pleased!" COTHREN agreed, but later cautioned, "we just have to make sure no one knows it's me involved." Later in the conversation, CASADA asked COTHREN, "we can discuss on the 30th but since the **caucus** has won't [sic] spend money on members companies and we want no one knowing your [sic] Phoenix how do we get around that to doing **[caucus]** mail[?]" COTHREN responded, "no one needs to know whose company it is." CASADA later said, "I just hope they don't ask the representatives from Phoenix to come and make his case to do **caucus** mail[.]" COTHREN responded, "they live in New Mexico. Will have to get on the phone for it and I could disguise my voice if I has [sic] to."

46. On or about May 20, 2020, Individual 4 discussed Phoenix Solutions with a member of the Political Party 1 Tennessee House **Caucus**. Individual 4 described Phoenix Solutions as her preferred survey mailer company. Individual 4 falsely said that Phoenix Solutions was owned and operated by Matthew Phoenix, an experienced political consultant with whom Individual 4 did business when Individual 4 used Washington, D.C.-based Consulting Firm 1 for political work. Individual 4 falsely said that Matthew Phoenix and his associate, "Candice," got tired of living in the Washington, D.C. area and decided to move back home to New Mexico, where Phoenix started Phoenix Solutions. Individual 4 falsely said that Individual 4 used Phoenix Solutions because of the quality of its work.

49. On or about August 10, 2020, Individual 4 attended a **meeting of the Political Party 1 House campaign committee**. Present at the meeting were several Tennessee Representatives, officials from the Speaker's Office, and a committee consultant. Individual 4 repeated the same false statements regarding Phoenix Solutions that Individual 4 had made to the Caucus member on or about May 20, 2020. Individual 4 also falsely told the committee members that Individual 4 did not make any money from Phoenix Solutions.

50. In or around October 2020, COTHREN texted CASADA about an issue with a payment to a vendor that CASADA was going to handle. COTHREN told CASADA, "he doesn't know me by Cade, only Matthew Phoenix," and later reminded CASADA, "Remember I am Matthew haha."

51. From on or about June 1, 2020, through on or about December 1, 2020, Phoenix Solutions took on more varied projects, but continued to receive payments from the State-funded Mailer Program and **campaign accounts** of members of the

General Assembly. During that timeframe, Phoenix Solutions' Financial Institution 1 Account x3886 received revenue of approximately $158,165, excluding payments from campaign accounts associated with CASADA and Individual 4.

Indictment at ¶¶ 23, 33, 34, 46, 49, 50, 51 (emphasis added).

All of the facts alleged in the above paragraphs surround Cothren's campaign work and business dealings with Political Party 1's caucus and are, therefore, irrelevant. Irrelevant factual allegations are, by definition, not essential to proving the charges for which Cothren has been indicted. *Huddleston*, 2017 U.S. Dist. LEXIS 122415, at *18. While Cothren maintains that his operation of Phoenix Solutions was entirely legal, the government has not charged Cothren for any crime arising from his or his company's campaign caucus work for Political Party 1, and it lacks the jurisdiction to do so. Consequently, the inclusion of these wholly irrelevant paragraphs in the Indictment will very likely cause jurors to confuse the allegations related to the Postage and Printing Allowance and conduct for which Cothren has been charged with the allegations in the Indictment concerning Cothren's separate and independent caucus campaign activities for which he has not been (and cannot be) federally charged.

The prejudicial nature of the caucus and campaign facts pled in the Indictment and listed above is patently obvious. The government's entire case against Cothren rests on the (misplaced) premise that Cothren, Casada, and Individual 4 deceived various state representatives and/or officials to secure constituent (read: non-campaign) work and compensation from purportedly public funds disbursed through the Postage and Printing Allowance. Every single charge in the Indictment hinges on that theory. While the charges in the Indictment all center on Cothren's business activities with respect to the Postage and Printing Allowance, the vast majority of the allegations that allude to some form of deception arise only in the context of the caucus and campaign activities of Cothren and his alleged co-conspirators: Casada and Individual 4. *See, e.g.,*

Indictment at ¶¶ 23, 33, 34, 46, 49, 50, 51. But these caucus and campaign allegations have absolutely <u>no bearing</u> on the alleged Postage and Printing Allowance conspiracy and other substantive charges against Cothren, and, as such, their inclusion in the Indictment will only confuse and inflame the prejudices of the jury. Accordingly, the Court should strike Paragraphs 23, 33, 34, 46, 49, 50, and 51 of the Indictment pursuant to Rule 7(d).

<u>**Conclusion**</u>

For all the foregoing reasons, and pursuant to Federal Rule of Criminal Procedure 7(d), Defendant Cade Cothren respectfully requests that the Court strike as surplusage Paragraphs 7, 8, 23, 33, 34, 46, 49, 50, and 51 of the Indictment.

Respectfully submitted,

**Sherwood Boutique Litigation, PLC**

/s/ Cynthia A. Sherwood
Cynthia A. Sherwood, #20911
Austin M. Correll, #39561
414 Union Street
Suite 1110
Nashville, TN 37219
T: 615-873-5670
F: 615-900-2312
cynthia@sherwoodlitigation.com
austin@sherwoodlitigation.com
*Counsel for Defendant Cade Cothren*

**Barnes & Thornburg LLP**

/s/ Joy Boyd Longnecker
Joy Boyd Longnecker, #29627
827 19th Avenue South
Suite 930
Nashville, TN 37203-3447
T: 615-925-9506
joy.longnecker@btlaw.com
*Counsel for Defendant Cade Cothren*

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing was electronically filed with the Clerk on July 25, 2023, and service was made upon all persons registered in that case via CM/ECF and/or by email.

/s/ Cynthia A. Sherwood