# UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| v. ) | |
| ) | Case No. 3:22-CR-00282 |
| GLEN CASADA and ) | District Judge Eli J. Richardson |
| CADE COTHREN ) | |
| ) | |
| Defendants. ) | |

## DEFENDANT CADE COTHREN'S
## MOTION TO CONTINUE TRIAL AND RELATED DEADLINES

Comes now Defendant Cade Cothren, by and through undersigned counsel, and respectfully moves this Court to continue the trial in this matter and all related deadlines pending the United States Supreme Court's decision in *Snyder v. United States*, Case No. 23-103. The Supreme Court granted certiorari on December 13, 2023, and the Court is expected to issue a decision in or around June 2024. The question presented in *Snyder* is "[w]hether section 666 criminalizes gratuities, *i.e.*, payments in recognition of actions the official has already taken or committed to take, without any *quid pro quo* agreement to take those actions." *James E. Snyder v. U.S.*, Case No. 23-103, Pet'n for Certiorari at I (Aug. 1, 2023). The elements of 18 U.S.C. § 666 are directly at issue in this case (*see* Doc. No. 3, hereinafter "Indictment," at Counts 1-4), and the Supreme Court is expected to specifically articulate and clarify the elements the United States is required to prove at trial.

The *Snyder* decision may or will materially impact nearly every phase of this case, including the Court's ruling on the pending Motions to Dismiss (Doc. Nos. 59 and 65), the presentation of the defense case, Rule 29 motions, and jury instructions, among other things. Considering the monumental impact that the *Snyder* decision will have on this complex case and

the cognizable risk of prejudice to Defendants if the trial proceeds as scheduled, Mr. Cothren respectfully requests that the Court continue the trial currently set to begin on March 5, 2024 and reset the trial for a date in the fall of 2024, after the Supreme Court has rendered its decision in *Snyder*.

## **LEGAL STANDARD**

Where, as here, the Supreme Court is addressing an issue at the core of a case, federal courts routinely find that a continuance is appropriate. *See In re Embry*, 831 F.3d 377, 377 (6th Cir. 2016) (holding resolution of appeal in abeyance pending Supreme Court's decision in another case); *Chowhury v. Worldtel Bangladesh Holding, Ltd.*, 746 F.3d 42, 47-48 (2d Cir. 2014) (same); *Golinski v. U.S. Off. Of Pers. Mgmt.*, 724 F.3d 1048, 1050 (9th Cir. 2023) (holding resolution of appeal in abeyance pending a Supreme Court's decision on a central issue); *United States v. Garcia-Gomez*, 2019 WL 331279 (N.D. Cal. Jan. 25, 2019) (staying resolution of habeas petition pending resolution of a question of law by the Supreme Court).

A district court enjoys "wide latitude in deciding how to exercise its discretion in applying the ends-of-justice provision of the Speedy Trial Act that governs whether a continuance should be granted." *United States v. Strickland*, 342 Fed. Appx. 103, 109-10 (6th Cir. 2009). A delay occasioned by a district court's grant of a continuance is excluded from the time within which a trial must start under the Speedy Trial Act if "the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial." 18 U.S.C. § 3161(h)(7)(A). The Speedy Trial Act requires district courts to consider several factors when determining whether to continue a trial date, including the degree of complexity of the case and whether the failure to grant the continuance would "result in a miscarriage of justice" and/or deny

2

one or more parties "reasonable time necessary for effective preparation." 18 U.S.C. § 3161(h)(7)(B); *see also United States v. White*, 920 F.3d 1109, 1115 (6th Cir. 2019).

An ends-of-justice continuance will allow this Court and the parties to benefit from the guidance that the Supreme Court will provide on key issues directly relevant to this complex case. The appellate circuit courts are conflicted in their interpretations of Section 666, and the Supreme Court is months away from resolving this circuit split. Moving forward without such guidance presents a significant risk of wasting the time and resources of this Court, the parties, and the jury.

## ARGUMENT

The interests of judicial economy and fairness to the parties, particularly Defendants, weigh heavily in favor of continuing the trial date until after the Supreme Court issues its decision in *Snyder*. The Supreme Court has agreed to hear a case arising out the Seventh Circuit's interpretation of the elements of 18 U.S.C. § 666 – a *key* charge in this case. The issue presented is "[w]hether section 666 criminalizes gratuities, *i.e.*, payments in recognition of actions the official has already taken or committed to take, without any *quid pro quo* agreement to take those actions." *Snyder*, Pet'n for Certiorari at 2 (attached hereto as **Exhibit A**; Order granting such Petition attached as **Exhibit B**). In addition to addressing the foregoing question, the Supreme Court likely will resolve whether a *quid pro quo* is required to prove bribery under Section 666. The Solicitor General and the Petitioner in *Snyder* appeared to agree that Section 666, at the very least, prohibits *quid pro quo* bribery in filings before the Supreme Court.[1]

---

[1]  The Solicitor General argued to the Supreme Court that the Seventh Circuit "correctly determined that Section 666 prohibits both *quid pro quo* bribery and the corrupt acceptance of gratuities" and that section 666 "straightforwardly encompasses" *quid pro quo* bribery. Government's Response to Pet'n for Certiorari at 9-10 (attached as **Exhibit C**). The Solicitor General repeatedly referred to "*quid pro quo* bribery" when addressing the scope of section 666, mirroring the Seventh Circuit's observation in *Snyder* that a "bribe requires a *quid pro quo* – an agreement to exchange this for that, to exchange money or something else of value for influence

3

It is unclear at this juncture whether the United States' position in this case and the Solicitor General's position in *Snyder* are aligned, however. The United States argued in its Consolidated Response to Defendants' Motions to Dismiss that Section 666 "requires only the corrupt intent to influence official business, not a *quid pro quo* of something of value in exchange for a specific official act." (Doc. No. 75 at n. 6) (citing *United States v. Abbey*, 560 F.3d 513, 520–21 (6th Cir. 2009)). Notwithstanding the Solicitor General's position in *Snyder*, the United States will very likely argue at trial that it is not required to prove a *quid pro quo* bribery in this case based on *Abbey* and current Sixth Circuit precedent. Mr. Cothren disagrees.

The *Snyder* decision may or will impact multiple stages of this case, including, but not limited to:

Motions to Dismiss: The Indictment charges Mr. Cothren with conspiring to violate, and violating, Section 666. (Indictment at Counts I, II, III, IV). Although the government has advanced a theory of *quid pro quo* bribery under Section 666, its position appears to be that it is not required to prove a *quid pro quo* arrangement because "corrupt intent to influence State business is all that § 666(a)(2) requires . . . ." (Doc. No. 75 at n. 6). The United States is out of step with the Solicitor General on that point. The question presented in *Snyder* seeks clarity on whether Section 666 criminalizes gratuities while presuming that Section 666, at a minimum, prohibits *quid pro quo* bribery. The Supreme Court is expected to articulate the exact elements the government is required to prove under Section 666 in a matter of months. This Court's adjudication of Defendants' Motions to Dismiss could also be informed by the *Snyder* decision. And, even if this Court's resolution of these motions is not interdependent on *Snyder*, proceeding to trial when

---

in the future." 71 F.4th 555, 579 (7th Cir. 2023). The Solicitor General's position appears to conflict with the prosecutors' view in this case.

the Supreme Court is about to provide guidance on the elements of Section 666 could unnecessarily expend significant judicial and other resources.

Rule 29: The *Snyder* decision will also impact the issues presented in Mr. Cothren's potential Rule 29 motion(s). After all, the government is required to prove the essential elements of Section 666 and all other charges beyond a reasonable doubt. *In re Winship*, 397 U.S. 358, 362 (1970). With the *Snyder* decision, the Supreme Court will, in all likelihood, clarify exactly those essential elements.

Jury Instructions: Perhaps most importantly, the *Snyder* decision will affect the jury instructions in this case. Providing clear and correct instructions to the jury in its consideration of the evidence is critical in every case. Although the government is evidently advancing a classic bribery and kickback theory in this case, it has already averred that it is not required to prove a *quid pro quo* bribery arrangement beyond a reasonable doubt to secure a conviction under Section 666. The government may disagree with this description, but it cannot dispute the *Snyder* case may well have significant impact on its theory.

A continuance of the trial date will remove the risk that the Court and the parties will waste time and resources working in a murky landscape around Section 666 that is about to be clarified by the Supreme Court. Denying the continuance will prejudice Mr. Cothren by requiring him to prepare for trial without a clear understanding of the elements of the charges he is defending. Without a continuance, Mr. Cothren will be prejudiced by a lack of finality and, as such, may be required to incur the expense and other challenges associated with a second trial. Further, a continuance does not prejudice the government in any way. In fact, the government will also likely benefit from the clarity of the *Snyder* decision. Judicial efficiency and the parties' interests weigh heavily in favor of a continuance in this case, which may amount to just a handful of months.

To be clear, Mr. Cothren is not asking to simply put this case on a shelf for the next few months. The parties will make good use of the time during any continuance. As noted, this is an incredibly complex case with a massive amount of discovery. Just last month, the government provided its ninth supplemental production. The production included approximately 699 gigabytes of data, including 11 computer and phone extractions, each of which contains thousands of files/documents. Counsel for Mr. Cothren are committed to continuing to work diligently to prepare for trial over the course of this year if a continuance is granted.

## **MEET AND CONFER**

On Tuesday, January 9, 2024, the undersigned counsel for Mr. Cothren conferred with counsel for the government about a potential continuance of the trial date pending the *Snyder* decision. The government requested time to consider the request and informed undersigned counsel on Thursday, January 11, 2024 that "the question presented in *Snyder* does not implicate the government's proof in this prosecution." The government further noted that it would not oppose a brief continuance on "an alternative basis," such as "scheduling or preparation," provided the trial was completed by May 31, 2024. As discussed above, Mr. Cothren maintains that all parties and the Court will be best served by resetting the trial in this case for a date following the *Snyder* decision.

WHEREFORE, Defendant Cade Cothren respectfully requests this Court enter an Order continuing the trial in this matter and all related deadlines pending the United States Supreme Court's decision in *Snyder v. United States* and resetting the trial to a date in the fall of 2024, or another available date after the Supreme Court has rendered its decision.

6

Respectfully Submitted,

**Sherwood Boutique Litigation, PLC**

/s/ Cynthia A. Sherwood
Cynthia A. Sherwood, #20911
Austin M. Correll, #39561
414 Union Street
Suite 1110
Nashville, TN 37219
T: 615-873-5670
F: 615-900-2312
cynthia@sherwoodlitigation.com
austin@sherwoodlitigation.com
*Counsel for Defendant Cade Cothren*

**Barnes & Thornburg LLP**

/s/ Joy Boyd Longnecker
Joy Boyd Longnecker, #29627
827 19th Avenue South
Suite 930
Nashville, TN 37203-3447
T: 615-925-9506
Joy.Longnecker@btlaw.com
*Counsel for Defendant Cade Cothren*

7

Case 3:22-cr-00282   Document 109   Filed 01/16/24   Page 7 of 8 PageID #: 704

**CERTIFICATE OF SERVICE**

I certify that a true and correct copy of the foregoing has been served on the following via the Court's CM/ECF system:

Amanda J. Klopf, Esq.
Assistant United States Attorney
719 Church Street, Suite 3300
Nashville, TN 37203
Amanda.Klopf@usdoj.gov

John P. Taddei, Esq.
Trial Attorney
Public Integrity Section, Criminal Division
U.S. Department of Justice
1301 New York Ave., NW
Washington, DC 20530
john.taddei@usdoj.gov

Edward M. Yarbrough
Jonathan P. Farmer
Bone, McAllester & Norton, PLLC
511 Union Street
Suite 1000
Nashville, TN 27319
eyarbrough@spencerfane.com
jfarmer@spencerfane.com

on this the 16th day of January 2024.

/s/ Cynthia A. Sherwood