# UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| v. ) | |
| ) | Case No. 3:22-CR-00282 |
| GLEN CASADA and ) | District Judge Eli J. Richardson |
| CADE COTHREN ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM IN SUPPORT OF EMERGENCY MOTION TO QUASH SEARCH WARRANT AND FOR AN IMMEDIATE PROTECTIVE ORDER PROHIBITING PROCESSING OR REVIEW OF MATERIALS SEIZED PENDING A HEARING[1]**

I.  **PRELIMINARY STATEMENT**

Mr. Cade Cothren, interested party and the holder of the subject cellular telephone of the above-captioned matter, hereby moves for an order to quash the warrant allowing the unlawful and unconstitutional seizure and search of his personal cellular telephone. Mr. Cothren's motion should be granted because the government lacks probable cause to either search or seize the items it describes in the patently and unconstitutionally overbroad search warrant. Given Mr. Cothren's impending trial date of March 5, 2024 in Case No. 3:22-cr-282, the government knew Mr. Cothren's phone would very likely contain – and the warrant specifically sought – certain privileged materials, attorney work product, and other confidential materials related to Mr. Cothren's pending criminal case. The government pursued and executed the warrant anyway, even though the evidence sought was clearly protected and was available from other sources and notwithstanding the hardship and prejudice that would result from seizing Mr. Cothren's phone,

---

[1] This memorandum, the supporting exhibits, and the corresponding motion are also being filed in the sealed case for the search warrant, Case No. 24-mj-1012.

1

violating his attorney-client and work product privileges, and denying him the ability to communicate with his counsel or assist them in the month leading up to his trial.[2]

Most importantly, the search warrant suffers from a fundamentally fatal flaw: it deliberately seeks evidence relevant to *Mr. Cothren's pending criminal case* but fails to establish probable cause to support the search and seizure of that evidence. The Fourth Amendment does not permit the government to skirt its constitutional obligations in this manner, and nor should this Court.

Finally, the existence and sheer volume of privileged materials on Mr. Cothren's phone related to his pending criminal case weigh heavily against allowing the government to use a taint team to review these highly sensitive and confidential files and in favor of this Court entering an emergency order prohibiting the government (including any taint team) from processing and reviewing any materials seized from Mr. Cothren's phone pending a hearing.

## II.  FACTUAL BACKGROUND

### A.  2021 Federal Investigation, Search Warrant, and Procedural History in Case No. 3:22-cr-282

On January 8, 2021, a search warrant was executed on Mr. Cothren's residence and person. (*See* 2021 Warrant, attached hereto as **Exhibit 1**). The warrant sought "all records relating to violations of 18 U.S.C. § 1343 (wire fraud), 18 U.S.C. § 666 (bribery of a public official), and 18 U.S.C. § 1001 (false statements) (the Target Offenses) involving Mr. Cothren [and a few identified individuals] since July 1, 2019." *Id.* at 1. The warrant authorized the agents to seize all "computers

---

[2] The government will undoubtedly point to Mr. Cothren's Motion to Continue his trial date (Dkt. No. 109) in an attempt to deflect this Court's attention away from or downplay the hardship and prejudice to Mr. Cothren flowing from the warrant. As this Court knows, however, the decision to continue (or not) the trial is not up to Mr. Cothren or the government; that decision rests solely with the Court.

or storage media used as a means to commit the violations." The scope of the records sought was limited to the following: "[r]ecords and information relating to a conspiracy to defraud the Tennessee State legislature through the use of consistent mail services"; "any and all communications between [the stated individuals], employees of the Speaker's Office of the Tennessee House of Representatives or other legislative aides, or other individuals wittingly or unwittingly participating in and relating to the Target Offenses;" "any and all communications, records, and information related to the Tennessee State legislators' postage and printing accounts funded by the State of Tennessee"; "all records and information related to [a few stated businesses]"; and "contracts and other business agreement documentation identifying individuals providing services to [the stated businesses]." *See id.* at 1(a)-(e) and 2.

On August 22, 2022, Mr. Cothren was indicted for various purportedly illegal acts, including federal program theft, bribery and kickbacks concerning a federal program, honest services wire fraud, use of fictitious name to carry out a fraud, and money laundering. *See United States v. Casada et. al*, Case No. 3:22-cr-00282, Dkt. No. 3 ("Indictment"). In or around March 2023, defense counsel engaged a private investigator, Michael Donaldson, to work on Mr. Cothren's case. Mr. Donaldson conducted work on behalf of Mr. Cothren and his defense, and, in so doing, gained insights into Mr. Cothren's defense strategy and access to attorney work product and privileged materials. On May 1, 2023, Mr. Cothren's counsel terminated Mr. Donaldson for contacting a potential witness in a manner that was, in counsel's view, inconsistent and incompatible with applicable ethical standards. Later, the government addressed concerns about Mr. Donaldson's conduct at a status conference in the pending criminal case on May 19, 2023.

The trial of this matter is set to begin on March 5, 2024. On January 16, 2024, Mr. Cothren filed a Motion to Continue Trial and Related Deadlines (Dkt. No. 109). The government initially

opposed Mr. Cothren's Motion to Continue (Dkt. No. 113), but the parties later conferred and the government filed an Unopposed Motion to Continue (Dkt. No. 117). The government's change of position on the trial date was largely based on the 2024 search warrant and its belief that the electronic devices belonging to Mr. Cothren and others "likely contain discoverable material as to defendant Cothren, including, but not limited to, material covered by Federal Rule of Criminal Procedure 16" and may "contain discoverable material as to defendant Casada." (Dkt. No. 117 at 1). Upon information and belief, no search warrant has been sought or obtained for Mr. Cothren's person or residence with respect to the pending criminal case since January 2021.

B. 2024 Federal Investigation and Search Warrant

At approximately 5:58 a.m. on January 30, 2024, federal agents executed a search warrant at Mr. Cothren's residence in Nashville, Tennessee. The search warrant references an ongoing "cyberstalking" investigation into potential violations of 18 U.S.C. §§ 2251A(A) and (B). Pursuant to the warrant, agents seized four cellular devices from Mr. Cothren's residence, only one of which belonged to Mr. Cothren.

The 2024 warrant is facially overbroad and constitutionally invalid. The warrant authorizes the seizure of items "relating to violations of 18 U.S.C. §§ 2251A(A) and (B), Cyberstalking, involving Cade Cothren, Larry Grimes, and Brian Manookian, from January 1, 2023 through the present." (*See* 2024 Warrant, attached as **Exhibit 2)**. Notwithstanding these ostensible statutory and date restrictions, the three categories of items (¶¶ 1-3) listed in the warrant are virtually limitless in scope and arguably permit the government to search within every nook and cranny of Mr. Cothren's phone for evidence that could potentially be related (or not) to the cyberstalking investigation: "any and all" of his communications, instant messages, text messages,

4

emails, contact lists, call logs, GPS location history, video content and files, and much more. (*See generally*, Ex. 2 at ¶¶ 1, 3).

As discussed in detail below, the problems with these over inclusive parameters are legion. First, the warrant directly and indirectly seeks materials protected by the attorney-client privilege and work product doctrine. With respect to the former, the warrant seemingly authorizes the government to seize and search for communications between and involving Mr. Cothren and Michael Donaldson, a private investigator who was briefly – until his termination – a part of Mr. Cothren's defense team. With respect to the latter, Mr. Cothren's criminal case has been pending since 2022, and he was under investigation for at least a year before his indictment. Mr. Cothren has had counsel since 2021, and, <u>as such, he has more than three years' worth of privileged and confidential attorney client communications and work product stored on his phone</u>. Second, the search warrant, perhaps by design, also seemingly allows the government to review the contents of Mr. Cothren's phone and search for evidence related to Mr. Cothren's pending criminal case without requiring the government to demonstrate probable cause for obtaining this evidence. (*See* Ex. 2, ¶ 3). And, the government readily admits it expects to find evidence related to Mr. Cothren's case among the files/data seized from Mr. Cothren's phone. (*See* Dkt. No. 117 at 1). Because the search warrant violates the Fourth Amendment (as well as Mr. Cothren's attorney-client and work product privileges), Mr. Cothren is asking this Court to quash the warrant and enter an interim order prohibiting the government from processing and reviewing any of the materials on his phone pending a hearing.

### III. ANALYSIS

The search and seizure warrant issued to Mr. Cothren is shockingly overbroad and unsupported by probable cause.[3]

Regardless of the government's suspicions or beliefs about Mr. Cothren's supposed role in the investigated activity, it must have probable cause for each category or type of information it seeks. Mr. Cothren has not seen, and the government has declined to produce, the affidavit supporting the warrant, so it is unclear whether the government met its probable cause burden with respect to the underlying investigation and purported violations of 18 U.S.C. § 2261A (which Mr. Cothren denies, for the record). However, because the government is clearly expecting to obtain[4], but has not established probable cause to seize, evidence related to Mr. Cothren's pending criminal case from his phone, the portions of the warrant ostensibly permitting the seizure and search of any materials relevant to Mr. Cothren's case should be quashed. The portions of the warrant directed to, and allowing, the seizure and search of materials protected by the attorney-client privilege and work product doctrine should also be quashed, as the government has absolutely no basis or justification for violating or invading Mr. Cothren's attorney-client and work product privileges or accessing other confidential materials revealing his defense strategy. And, the government's planned use of a taint team would compound, rather than cure, the problem.

The all-encompassing categories listed in Attachment B of the warrant (attached hereto as **Exhibit 2**) are not narrowly tailored to those particular matters upon which they believe they have

---

[3] Because the affidavit in support of the search warrant has not been disclosed to Mr. Cothren, his challenge to this warrant is based solely upon the warrant itself and his understanding of the investigation. Mr. Cothren does not waive, and expressly reserves, the right to raise additional challenges to the warrant based on new information and to seek to exclude or suppress evidence seized pursuant to the warrant at a later date.

[4] *See* Unopposed Motion to Continue, Case No. 3:22-cr-282, Dkt No. 117, at p. 1.

probable cause to search, as the U.S. Constitution requires. U.S. CONST. Art. IV. Accordingly, this Court should issue an order quashing the warrant and prohibiting the government from having unfettered access to the contents of Mr. Cothren's cellular telephone. Alternatively, this Court could order the government to narrow the scope of the warrant to encompass only those items for which the government has established probable cause and order Mr. Cothren's counsel or a third-party *e.g.*, (a special master or outside vendor) to perform a narrowly tailored search and privilege review, and then provide *only* those materials described in the warrant, so that the government is not allowed unrestricted access to irrelevant, private, or privileged/protected information on Mr. Cothren's phone.

The overbreadth of the warrant is grounds alone to quash it. But the government's decision to pursue and execute the warrant is also highly problematic in light of: (1) Mr. Cothren's pending criminal case, (2) the March 5, 2024 trial date in Mr. Cothren's case, and (3) the government's awareness of the high probability that Mr. Cothren's cellular telephone would contain voluminous privileged communications and attorney work product and its unabashed pursuit of these protected materials (relating to Mr. McDonald) via the warrant. As discussed below, the government's use of a taint/filter team made up of prosecutors and/or agents does not, in any way, allay or resolve Mr. Cothren's concerns that confidential and privileged information related to his pending case will be reviewed and potentially utilized by the government in that case. There is simply no justification for the government seizing Mr. Cothren's personal phone, targeting and accessing his confidential and privileged communications, and preventing him from being able to communicate with his attorneys and prepare for his upcoming trial – particularly when there are other less expansive, obstructive, and intrusive means by which the government could have obtained the evidence sought.

7

Case 3:22-cr-00282    Document 120    Filed 02/02/24    Page 7 of 18 PageID #: 801

## A. THE WARRANT IS OVERBROAD AND SHOULD BE QUASHED FOR LACK OF PROBABLE CAUSE.

The warrant should be quashed because it is unconstitutionally overbroad; therefore, the government has not established probable cause to access all of the information on Mr. Cothren's phone, which is now in the government's possession. Even assuming the government could meet its probable cause burden with respect to the alleged violations of the federal cyberstalking statute (18 U.S.C. § 2261A), which Mr. Cothren disputes but has insufficient information to challenge at this point, the warrant is still unconstitutional as written. Furthermore, the government could – and should – have pursued other less invasive and obtrusive avenues to obtain the evidence sought in light of the extreme hardship that has resulted from the seizure of Mr. Cothren's phone five weeks before his trial is scheduled to begin.

The Fourth Amendment provides that "the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated." U.S. CONST. Art. IV. The principal purpose of the Fourth Amendment "is to safeguard the privacy and security of individuals against arbitrary invasions by government officials." *Camara v. Mun. Ct.*, 387 U.S. 523, 528 (1967). Warrants must comply with the Fourth Amendment, which unambiguously states "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. CONST. Art. IV; *see also Groh v. Ramirez*, 540 U.S. 551, 557 (2004).

Private individuals like Mr. Cothren have a "reasonable expectation of privacy" in their emails and electronic communications, which are entitled to "strong protection under the Fourth Amendment." *United States v. Warshak*, 631 F.3d 285-286 (6th Cir. 2010). Warrants seeking electronic information are, like other warrants, constrained by the Fourth Amendment's

8

particularity requirements, which restrict "authorization to search to the specific areas and things for which there is probable cause to search." *Md. v. Garrison*, 480 U.S. 79, 84 (1987). The particularity mandate "ensures that the search will be carefully tailored to its justifications, and will not take on the character of the wide-ranging exploratory searches the Framers intended to prohibit." *Id.* Absent a showing of probable cause that there is a nexus between the criminal conduct alleged by the government and ALL of the information contained in Mr. Cothren's phone, which is what the warrant essentially covers, the government is not entitled to search or seize or examine the entire contents of Mr. Cothren's personal cellular phone from January 2023 to the present just to see if it might contain evidence related to the underlying cyberstalking investigation. *See, e.g., In the Matter of the Search Warrants for Case Nos. 12-MJ-8119 DJW and Info. Assoc. with 12-MJ-8191-DJW Target Email Address,* Nos. 12-8119, 12-8191, 2012 WL 4383917, at *9 (D. Kan. Sept. 21, 2012) (citing concerns with lack of any limits on government's review of subject email accounts or filtering procedures for information outside the scope of probable cause or containing attorney-client privileged communication).

    a. **<u>The government lacks probable cause to search and seize all of the items listed in Attachment B, especially evidence related to Case No. 3:22-cr- 282</u>**.

The government seized Mr. Cothren's personal cellular telephone and now has access to all of its contents, including his emails, text messages, photographs, contacts, documents, social media, and other applications, with the only real limiting factor being a one-year date range. Although the government seemingly restricts the four main categories of items to be seized to those "relating to violations of 18 U.S.C. §§ 2261A(A) and (B), Cyberstalking, involving Cade Cothren, Larry Grimes, and Brian Manookian from January 1, 2023 through the present," this "restriction" is completely illusory.

Paragraph 3 of the search warrant in particular is impermissibly overbroad and fails the Fourth Amendment's specificity requirements. On this point, a side-by-side comparison of requests concerning computers and telephones in the first and second warrants issued against Mr. Cothren is instructive. Copies of each are attached hereto as **Exhibits 1** and **2.**

### January 21, 2021 Warrant

> 3. For any computer or storage medium whose seizure is otherwise authorized by this warrant, and any computer or storage medium that contains or in which is stored records or information that is otherwise called for by this warrant (hereinafter, "COMPUTER"):

### January 30, 2024 Warrant

> 3. For any cellular telephone, computer, electronic devices, or storage medium whose seizure is otherwise authorized by this warrant, and any computer or storage medium that contains or in which is stored records or information that is otherwise called for by this warrant (hereinafter, "COMPUTER"), the search of those items shall include all records and information that may constitute evidence of criminal violations under investigation relating to Title 18, United States Code, Section 2261A (Cyberstalking), January 1, 2023, through the present, including:

The first example is limited to "computers" (defined to include mobile phones) seized pursuant to the warrant and containing "records or information called for by this warrant." *See* Ex. 1 at ¶ 3. The second example is much broader and authorizes a plenary search of "any cellular telephone" seized pursuant to the warrant for items that <u>"include" but are expressly not limited to,</u> "all records and information that may constitute evidence of criminal violations under investigation relating to" the cyberstalking statute. *See* Ex. 2 at ¶ 3. This permissive language was doubtlessly designed to allow the government to conduct a sweeping and unrestricted search of nearly every type of data or record imaginable on Mr. Cothren's phone. A closer review of the

10

Case 3:22-cr-00282   Document 120   Filed 02/02/24   Page 10 of 18 PageID #: 804

sub-paragraphs in Paragraph 3 strongly signals that is the government's intent, as some items are tied to the specific crime under investigation (*see, e.g.,* 3(e), (f), (u), (v), (w), (x), (y)) while others do not include this required nexus (*see, e.g.,* 3(p), (q), (r), (s), (t)). That conspicuous omission, when paired with the overly inclusive language in paragraph 3, means that the government has arguably created an avenue for itself to search for, evidence related to ANY potential crime, including the crime(s) for which Mr. Cothren has already been charged, or information that is not criminal in nature at all but may be relevant (or irrelevant) to the pending case, **despite the fact that it has not established probable cause for such a search**.

Indeed, the government has already acknowledged, in communications with counsel for Mr. Cothren and at least one public filing (United States' Mot. Continue, Dkt. No. 117), that it fully expects to obtain evidence relevant to Mr. Cothren's pending case pursuant to this warrant. The government has also indicated that the underlying investigation is in some way related to Mr. Cothren's case, which may explain – but in no way justifies – the extremely poor taste and timing of the warrant – approximately five weeks before Mr. Cothren's trial is set to begin. This is especially true in light of the government's failure to obtain a search warrant in the pending case.

In sum, the government should not be permitted – in this or ANY case – to search the entire contents of Mr. Cothren's phone for potentially responsive information and then invoke the "plain view doctrine" after the fact to circumvent the requirements of the Fourth Amendment. Any portion of the search warrant that could be read to allow the government to do just that (*i.e.*, Paragraph 3) should be quashed.

11

## b. The government has much less intrusive and invasive options available to it for obtaining the evidence related to the underlying investigation.

The facts and circumstances surrounding Mr. Cothren's current case and the 2024 search warrant demand an extremely measured and careful approach to ensure that Mr. Cothren's constitutional rights and applicable privileges (discussed below) are not violated.

Here, the government had – and still has – plenty of avenues for obtaining the evidence sought that would not give the government carte blanche to examine Mr. Cothren's phone and the reams of data that are privileged or wholly unrelated to the pending investigation. Mr. Cothren's counsel could search for and provide the communications requested. A third-party vendor could image Mr. Cothren's phone and perform searches using mutually-agreed upon terms and date limiters to narrow the scope of the warrant, exclude privileged documents, and identify responsive information to be turned over to the government. A special master could be appointed to review and identify non-privileged evidence tied to the alleged criminal violations being investigated. *See In re Grand Jury Subpoenas*, 454 F.3d 511, (6th Cir. 2006) (requiring district court to appoint Special Master to perform a first level review and segregation of privileged documents subpoenaed by grand jury) (citing *United States v. Abell*, 914 F.Supp. 519 (S.D. Fla. 1995)). The government could also obtain (and likely has) evidence germane to its cyberstalking investigation from the other individuals named in the warrant who are NOT currently under indictment and scheduled to go to trial in five weeks. The government can issue grand jury subpoenas or warrants to the third parties in possession of the accounts and communications identified in the warrant (*e.g.*, Apple, Google, X (f/k/a Twitter), Snapchat etc.). In short, Mr. Cothren is plainly not the only source of the evidence seized pursuant to the search warrant. Because his phone contains volumes of privileged and other protected materials concerning his pending case, the warrant should be

quashed, and the government should be required to pursue and obtain the evidence it seeks from other sources upon a proper showing of probable cause.

## B. THE WARRANT VIOLATES MR. COTHREN'S ATTORNEY-CLIENT PRIVILEGE AND THE WORK PRODUCT DOCTRINE.

In addition to its overbreadth, the warrant is also unconstitutional because it seeks information and documents that are protected by the attorney-client privilege and work product doctrine. The permissive language of Paragraph 3 proves problematic in this context, too, because it authorizes the government to seize and search for "all communications between, by, or with" Mr. Cothren and other individuals, one of whom is Michael Donaldson, a private investigator who (as the government well knows) was briefly retained by Mr. Cothren's counsel to provide services in connection with his pending criminal case.

The broad and unrestricted sub-paragraphs (p-t) of Paragraph 3 seemingly permit the government to review "any" and "all" "records and information relating to call logs…"; "all voice mail content"; "all text messages, iMessages, and multimedia messages…"; and "any email" details, contacts, and messages on Mr. Cothren's phone, which (as the government knows) would include his communications with counsel and Mr. Donaldson, when he was a part of Mr. Cothren's defense team. Mr. Cothren is not aware of any authority, evidence or justification for the government obtaining these materials, which are clearly protected by the attorney-client privilege and work product doctrine.

As the United States Supreme Court has recognized, the attorney-client privilege is "the oldest of the privileges for confidential communications known to the common law." *Upjohn Co. v. United States*, 449 U.S. 383 (1981). The purpose of the attorney-client privilege, of course, is "to ensure free and open communications between a client and his attorney." *In re Grand Jury*

13

*Subpoenas*, 454 F.3d 511, 519 (6th Cir. 2006) (citing *Fisher v. United States*, 425 U.S. 391 (1976)). The work product privilege has a similar purpose to (but is narrower than) the attorney-client privilege and protects "solely to attorney work product compiled in anticipation of litigation." *In re Grand Jury Subpoenas*, 454 F.3d at 520. That shared purpose is the bedrock of the attorney client relationship, as the Sixth Circuit has recognized:

> **…people should be free to make requests of their attorneys without fear, and [their] attorneys should be free to conduct research and prepare litigation strategies without fear that these preparations will be subject to review by outside parties.**

*Id.* (emphasis added).

While neither the attorney-client nor work product privilege is absolute, "the government must show sufficient cause to overcome these privileges." *Id.* To Mr. Cothren's knowledge, no such showing has been made in this case. Consequently, the portions of the search warrant directly seeking communications and other documents concerning Mr. Cothren and Mr. Donaldson during the period of time the latter was engaged as a private investigator (approximately March – May 2023) should be quashed.

**C.    IF THE SEARCH WARRANT IS UPHELD, MR. COTHREN OR A THIRD PARTY – NOT THE GOVERNMENT – SHOULD CONDUCT A PRIVILEGE REVIEW.**

For the Court to allow the government, which has already "seized" all of the communications on Mr. Cothren's phone, to review all of the information on it to determine – in its sole discretion – its putative relevance to the underlying investigation AND Mr. Cothren's pending criminal case, would effectively gut the Fourth Amendment and allow the exact invasion of Mr. Cothren's privacy and other rights that the Constitution is supposed to protect. For that reason alone, the warrant should be quashed or, alternatively, limited in scope to exclude matters

14

related to his pending criminal case and materials protected by the attorney-client and work product privileges.

If the idea of defense counsel sifting through the government's prosecution memoranda, research, work product, communications with agents, and other case materials strikes the Court as outrageous, then the Court should be equally disturbed by – and quash – the government's attempt to the very same thing in this case. Given the immanency of Mr. Cothren's trial, the government likely presumed (correctly) that his phone would contain documents concerning trial strategy, interview strategies, pleading drafts, internal memoranda, notes to counsel, notes of team meetings, and much more. But it pursued the warrant anyway. To prevent further and irreparable harm to Mr. Cothren, an emergency protective order prohibiting the government from reviewing any of the data seized from Mr. Cothren's phone pending a hearing is necessary because the prejudice to Mr. Cothren resulting from the government's review of these confidential and constitutionally protected materials would be irreversible and leave him without a remedy once such review is actually undertaken and/or completed.

In response to Mr. Cothren's concerns about the government accessing and reviewing his confidential and privileged materials, the government will attempt to assure this Court (as it has the defense) that it has installed an "independent" taint/filter team comprised of prosecutor(s) and agent(s) who are not involved in the underlying investigation or Mr. Cothren's pending case. But the Sixth Circuit has already recognized the inherent and significant problems with the government's use of taint teams. First, "taint teams present inevitable, and reasonably foreseeable risks to privilege, for they have been implicated in the past in leaks of confidential information to prosecutors." *In re Grand Jury Subpoenas*, 454 F.3d at 520. Second, even if the government has the best of intentions, and the taint team professes an interest in preserving privilege, the

15

government "also possesses a conflicting interest in pursuing the investigation." *Id.* "[H]uman nature being what it is, occasionally some taint-team attorneys will make mistakes or violate their ethical obligations." *Id.* at 523 (citing incident in *United States v. Noriega*, 764 F.Supp.1480 (S.D. Fla. 1991) whereby taint team mistakenly turned over tapes containing privileged attorney-client communications to members of investigating team). Third, **the *Noriega* flub highlights "an obvious flaw in the taint team procedure: the government's fox is left in charge of the [defendant's] henhouse, and may err by neglect or malice, as well as by honest differences of opinion**." *Id.* at 523 (emphasis added).

While it is possible (but unlikely) that the government's taint team adopts a more restrictive view of privilege than Mr. Cothren's counsel, this view still ignores and utterly fails to cure the inherent dangers of the taint team procedure. The government's procedure would only allow defense counsel to assert the privilege over documents *the taint team has identified* as clearly or possibly privileged. *Id.* at 523. That method is obviously flawed, as there is "no check in the proposed taint team review procedure against the possibility that the government's team might make some false negative conclusions, finding validly privileged documents to be otherwise." *Id.* Because Mr. Cothren's interest in protecting privilege far outweighs whatever interest the government may proffer to support its taint team procedure, this Court should find that the use of a government taint team is inappropriate and impermissible under the current circumstances. The Court should also follow the protocol outlined in *In re Grand Jury Subpoena*, order the government to immediately cease and desist from reviewing the data on Mr. Cothren's phone (if already underway), and hold a hearing to address the options available for conducting a first-level privilege and responsiveness review of the data seized from Mr. Cothren's phone.

## IV. CONCLUSION

The Fourth Amendment requires the government's warrant to be particularized to prevent the government from gaining unfettered access to search, seize, and retain irrelevant, non-responsive, and privileged material. The search warrant executed on January 30, 2024 does not pass constitutional muster. Thus, Mr. Cothren respectfully requests that this Court issue an order quashing or, alternatively, narrowing the scope of, the search and seizure warrant executed at Mr. Cothren's home on January 30, 2024. Mr. Cothren further requests that this Court enter an emergency protective order prohibiting the government's continued processing of Mr. Cothren's device and use of a taint team and its review of any materials from Mr. Cothren's phone pending a hearing. Further, Mr. Cothren requests that the Court order the government to provide the affidavit underlying the search warrant. Without it, Mr. Cothren cannot fully know the nature and extent of the search warrant's impact on the current pending criminal case.

Respectfully Submitted,

**Sherwood Boutique Litigation, PLC**

*/s/ Cynthia A. Sherwood*
Cynthia A. Sherwood, #20911
Austin M. Correll, #39561
414 Union Street
Suite 1100
Nashville, TN 37219
T: 615-873-5670
F: 615-900-2312
cynthia@sherwoodlitigation.com
austin@sherwoodlitigation.com
*Counsel for Cade Cothren*

**Barnes & Thornburg LLP**

*/s/ Joy Boyd Longnecker*
Joy Boyd Longnecker, #29627
827 19th Avenue South

Suite 930  
Nashville, TN 37203  
T: 615-925-9506  
[joy.longnecker@btlaw.com](mailto:joy.longnecker@btlaw.com)  
*Counsel for Cade Cothren*

**CERTIFICATE OF SERVICE**

I certify that a true and correct copy of the foregoing motion was electronically filed with the Clerk on February 2, 2024, and service was made upon all persons registered in that case via CM/ECF and/or by email.

> Amanda J. Klopf, Esq.
> Assistant United States Attorney
> 719 Church Street, Suite 3300
> Nashville, TN 37203
> Amanda.Klopf@usdoj.gov
>
> John P. Taddei, Esq.
> Trial Attorney
> Public Integrity Section, Criminal Division
> U.S. Department of Justice
> 1301 New York Ave., NW
> Washington, DC 20530
> john.taddei@usdoj.gov

*/s/ Joy Boyd Longnecker*