UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | NO. 3:22-CR-00282 |
| ) | JUDGE RICHARDSON |
| GLEN CASADA ) | |
| CADE COTHREN ) | |

**GOVERNMENT'S MOTION *IN LIMINE* REGARDING
IMPROPER DEFENSE ARGUMENTS AND JURY NULLIFICATION**

The United States of America, through Robert E. McGuire, Acting United States Attorney for the Middle District of Tennessee, Assistant United States Attorney Taylor J. Phillips, and Trial Attorneys John P. Taddei and Blake J. Ellison (collectively, "United States" or "government"), respectfully moves *in limine* to preclude the defendants from introducing evidence or argument before the jury relating to selective or vindictive prosecution, or otherwise inviting jury nullification. In public statements, filings, and correspondence with the Justice Department, the defendants and their counsel have repeatedly and baselessly challenged the government's charging decision in this matter and suggested that they intend to introduce evidence or make argument concerning that decision. The government respectfully seeks a determination from this Court that the defendants may not raise this issue—which has no bearing on the elements of the charged offenses and is not a factual defense to the charges—at trial.

**BACKGROUND**

In August 2022, a federal grand jury returned a 20-count Indictment charging the defendants with offenses related to a scheme to defraud the State of Tennessee. (*See* D.E. #3). Several months earlier, in March 2022, Robin Smith pleaded guilty to honest services wire fraud, in violation of 18 U.S.C. §§ 1343 and 1346, for her role in this scheme. (*See United States v.*

1

*Smith*, 3:22-cr-00078, D.E. #15 (M.D. Tenn. Mar. 8, 2022) (Richardson, J.)). The indictment alleges that, in 2019 and 2020, Cothren, with Casada's knowledge and support, created a company called Phoenix Solutions for the purpose of profiting off a State-funded program used by legislators to send correspondence to their constituents. Seeking to hide his and Casada's affiliation with Phoenix Solutions, Cothren created a fake person—Matthew Phoenix—and held him up to be the company's owner and operator in a falsified tax form and other fraudulent paperwork submitted to the State and in correspondence with State employees and legislators. To facilitate the company's success, Cothren enlisted Casada, a Tennessee State Representative, and Representative Smith to use their official positions to ensure disbursement of State funds to Phoenix Solutions and cause other legislators to direct program funds to the company. To further the scheme, the conspirators used sham invoices to secretly and fraudulently funnel State money to Phoenix Solutions through the bank accounts of consulting firms that the two legislators controlled. In return for causing and expediting State payments to Phoenix Solutions, both directly and secretly through the consulting firms, Cothren paid Casada and Smith more than $35,000 in bribes and kickbacks.

Over the past few months and weeks, the defendants and their counsel have publicly and privately attacked the grand jury's indictment by alleging that the case is motivated by considerations other than the facts or the law. On February 6, 2025, defendant Cothren wrote on X (formerly Twitter) that this prosecution was "a staggering waste of resources, a mockery of justice, and proof that [the government's] priorities have nothing to do with the law—or the truth." Cade Cothren (@CadeCothren), X (Feb. 6, 2025 10:54 AM), https://x.com/CadeCothren/status/1887530299430486124. On or about March 24, 2025, counsel for the defendants met with the Acting United States Attorney and requested that the Justice

2

Case 3:22-cr-00282    Document 299    Filed 04/10/25    Page 2 of 7 PageID #: 2311

Department voluntarily dismiss the indictment in this case based, in part, on unfounded allegations that "the Deep State" initiated a "weaponized" prosecution against the defendants based on improper considerations. On April 4, 2025, their request was rejected.

On March 28, 2025, counsel made a similar suggestion in a public filing before this Court, claiming that "when no criminal wrongdoing was discovered" with respect to a separate investigation, "the FBI expanded its investigation," eventually leading to the instant indictment. (D.E. #59 at 42). Counsel claimed that "aspects of that investigation are arguably relevant to this case because the FBI investigation into members of the legislative and executive branches began with" that investigation. (*Id.*). Most recently, on or about April 1, 2025, defendant Casada personally called a wealthy Tennessee resident and alleged that this prosecution is "a political witch hunt." He urged the individual to call Tennessee's two sitting United States Senators and request that they influence an alleged committee considering the viability of this case.

The defendants have provided no evidence to support their allegations that this prosecution is, or ever has been, motivated by improper considerations. Nor have they filed any motions before this Court alleging selective or vindictive prosecution, or otherwise claimed any impropriety infecting the grand jury's decision to return the instant indictment. Even assuming their claims had any merit—which they do not—they are not proper for the jury's consideration.

## ARGUMENT

The Court should preclude the defendants from introducing any evidence or argument about the government's charging decision in this case, and otherwise prohibit the defendants from arguing to the jury that it should base its verdict on anything other than the facts and the law. The defendants were free to raise legal arguments concerning the initiation of this prosecution by way of a pretrial motion. They did not do so. As this case proceeds to trial, the introduction of evidence

3

and allegations concerning the government's charging decisions is unequivocally impermissible. Accordingly, the government seeks an order barring the defendants from presenting any argument or evidence at trial regarding the government's charging decision (or related allegations of selective or vindictive prosecution).

Prosecutors have wide latitude to determine whether an individual's conduct merits criminal prosecution. "In our system, so long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in [the prosecutor's] discretion." *Bordenkircher v. Hayes*, 434 U.S. 357, 364 (1978); *accord United States v. Batchelder*, 442 U.S. 114, 124 (1979). "This broad discretion rests largely on the recognition that the decision to prosecute is particularly ill-suited to judicial review." *United States v. Talbot*, 825 F.2d 991, 1000 (6th Cir. 1987) (quoting *Wayte v. United States*, 470 U.S. 598, 607 (1985)). Moreover, "[s]eparation of powers concerns prohibit [courts] from reviewing a prosecutor's charging decisions absent a *prima facie* showing that it rested on an impermissible basis, such as gender, race or denial of a constitutional right." *United States v. Vassar*, No. 2:05-cr-75, 2007 WL 470397, at *3 (E.D. Tenn. Feb. 9, 2007) (quoting *United States v. Palmer*, 3 F.3d 300, 305 (9th Cir. 1993)). Further, "the presumption of regularity supports . . . prosecutorial decisions and, in the absence of clear evidence to the contrary, courts presume that [prosecutors] have properly discharged their official duties." *United States v. Armstrong*, 517 U.S. 456, 464 (1996) (quoting *United States v. Chemical Foundation, Inc.*, 272 U.S. 1, 14–15 (1926)). Any challenge to the government's exercise of its prosecutorial discretion presents a purely legal issue and not an issue for the jury. *See* Fed. R. Crim. 12(b)(3)(A) (providing that a "motion alleging a defect in instituting the prosecution" must "be raised by pretrial motion").

4

Here, there is no evidence that the government abused its discretion in charging the defendants, who—as Robin Smith has admitted under oath before this Court—engaged in a brazen, multi-year corruption scheme. There is no allegation that the government charged the defendants on any impermissible basis "such as gender, race or denial of a constitutional right." *Palmer*, 3 F.3d at 305. Moreover, even if the defendants believed the government had abused its prosecutorial discretion in charging them, the issue is legal rather than factual. *See* Fed. R. Crim. P. 12(b)(3)(A). The defendants were free to bring a pretrial motion alleging abuse of prosecutorial discretion before this Court, but they may not sidestep the rules by arguing this issue—or otherwise presenting evidence on it—to the jury. *See United States v. Taylor*, 583 F. Supp. 2d 923, 932 (E.D. Tenn. 2008) (holding that arguments challenging prosecutorial decision-making "are for the Court and not the jury"), *aff'd*, 814 F.3d 340 (6th Cir. 2016).

To the extent the defendants may seek to repackage this argument as a claim of selective or vindictive prosecution, any claims of "selective or vindictive prosecution" must similarly "be raised by pretrial motion." Fed. R. Crim. P. 12(b)(3)(A)(iv). On the merits, any such claim would certainly fail. Similarly situated individuals—that is, individuals who are alleged to have been involved in a scheme to trade public office for private payment—are routinely prosecuted. And there is no support for the notion that, even if this prosecution had evolved from an investigation into other conduct, such a basis for prosecution would constitute an "impermissible motive" in violation of the Equal Protection Clause. There is also no support for a claim that this prosecution is founded on an "unjustifiable standard such as race, religion, or other arbitrary classification." *Armstrong*, 517 U.S. at 464. The defendants have been prosecuted—and indicted by an impartial grand jury—for engaging in fraud, bribery, theft, and money laundering schemes, and for no other

reason. Coconspirator Robin Smith acknowledged as much through her knowing and voluntary decision to plead guilty to honest-services wire fraud for her role in these schemes.

Finally, the defendants should be prohibited from making any similar arguments that would invite jury nullification. "Jury nullification arguments are improper." *United States v. Frazier*, 443 F. Supp. 3d 885, 902 (M.D. Tenn. 2020) (prohibiting defense from asserting nullification arguments). "The Sixth Circuit has consistently held that defendants do not have the right to present evidence or arguments solely to encourage jury nullification." *United States v. Saylor*, No. CR 23-CR-014, 2024 WL 3528639, at *3 (E.D. Ky. July 24, 2024) (citing *United States v. Krzyske*, 836 F.2d 1013, 1021 (6th Cir. 1988)). The defendants may not invite the jury to decide this case on anything other than the facts and the applicable law. Accordingly, the Court should preclude any nullification or nullification-type evidence or argument, including their allegation that law enforcement has been "weaponized" against them.

## CONCLUSION

For the foregoing reasons, the government requests that the Court preclude the defendants from arguing or presenting evidence about purported improper motivations for the prosecution, asserting related selective or vindictive prosecution arguments, or otherwise making arguments to the jury that have no valid purpose other than jury nullification.

Respectfully submitted,

ROBERT E. McGUIRE
Acting United States Attorney for the
Middle District of Tennessee

*/s/ Taylor Phillips*
TAYLOR PHILLIPS
Assistant United States Attorney
719 Church Street, Ste 3300

Nashville, Tennessee 37203
Telephone: 615-736-5151

*/s/ John P. Taddei*
JOHN P. TADDEI
BLAKE J. ELLISON
Trial Attorneys
Public Integrity Section, Criminal Division
United States Department of Justice

7