IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | NO. 3:22-cr-00282 |
| v. | ) | |
| | ) | JUDGE RICHARDSON |
| GLEN CASADA | ) | |
| CADE COTHREN | ) | |

## STATUS UPDATE REGARDING GOVERNMENT'S MOTION *IN LIMINE* PART IV(1)

The government has moved *in limine* to admit evidence that defendants Casada and Cothren sent racist, sexual, and drug-related text messages to each other and others while serving as State government officials and that the messages were widely covered in the media. (D.E. #179-1 at 12-15; *see also* Ex. 1, Tennessean Article; Ex. 2, AP Article; Ex. 3, News Channel 5 Article). The government maintains that such evidence is relevant and highly probative of materiality—a contested element the government must prove at trial—and is admissible for additional permissible purposes including, at a minimum, to show the defendants' motive. The defendants have opposed the admission of that evidence, primarily arguing that the messages are substantially more prejudicial than probative. (D.E. #280 at 23-28). The Court denied the government's motion *in limine* as premature, without prejudice to the Government offering any evidence at trial. (D.E. #318 at 5-6 (describing this particular government motion *in limine* as Part IV(1))).

During the discussion at the pretrial conference, the Court suggested that the parties consider an agreed line of direct examination for government witnesses, potentially including directing the witnesses to answer only "yes" or "no."

The government provides this status update to inform the Court that the parties are at an impasse, and to advise the Court that the issue is likely to reemerge when the government conducts

direct examination of several witnesses early in the trial. In an effort to prepare the Court, the government includes the alternative proposals of the parties below.

The government proposed the following line of questioning to the defense:

*I just want you to answer yes or no to the following questions:*

1. *Was there a scandal relating to Cade Cothren and Glen Casada around May 2019?*

2. *Was the scandal widely reported in Tennessee media?*

3. *Did you read news articles about the scandal?*

    a. *[If yes] In those articles, did Cothren and Casada give quotes to the media about the scandal?*

4. *Did Cothren resign from his position as Chief of Staff just days after news of the scandal broke?*

5. *Due in whole or in part to the scandal, did the House Republican Caucus hold a vote of no-confidence in Casada as Speaker of the House?*

6. *Did the majority of the House Republican Caucus vote that they had no confidence in him?*

7. *Did Casada step down from the Speakership shortly after that and remain an ordinary House representative?*

8. *Circling back to Mr. Cothren, was the scandal so bad that you believed that working with Mr. Cothren would risk harming your (or the State's) reputation?*

9. *After the scandal, did you trust Mr. Cothren?*

10. *If you had believed that Mr. Cothren was behind Phoenix Solutions, would that have been capable of influencing your decision to work with Phoenix Solutions [REA/RWC]?*

The defendants jointly responded that the only questions to which they would not object on the basis of leading during direct examination are the following:

> 1. *Was there a scandal relating to Cade Cothren and Glen Casada around May 2019?*
>
> 2. *Did you know about the scandal at the time?*
>
> 3. *Did Cothren resign from his position as Chief of Staff shortly after news of the scandal?*
>
> 4. *Due in whole or in part to the scandal, did Casada voluntarily step down from the Speakership but remain an ordinary House representative?*

The government maintains the position set forth in its motion *in limine*: the media's coverage of Cothren and Casada's text messages is one of the primary reasons Cothren's identity was material to legislators and the State. Therefore, the evidence is relevant and highly probative. The Rule 403 "balancing test for excluding relevant evidence . . . is strongly weighted toward admission." *United States v. Asher*, 910 F.3d 854, 860 (6th Cir. 2018). The conspirators claimed that Phoenix Solutions was run by an experienced political consultant who had previously worked at a prestigious consultancy in Washington. In reality, Cothren—a person who was anathema in many Tennessee political circles based on the widely reported scandal arising from the very messages at issue in this motion *in limine*—ran the company. The relationship of the evidence identified in the government's motion *in limine* to the charged offenses in this case is unlike the evidence considered in *United States v. Hazelwood*, 979 F.3d 398 (6th Cir. 2020), where the trial court acknowledged that "the recordings 'd[id] not go to any of the elements of the offenses with which Mr. Hazelwood [was] charged in the indictment.'" *Id.* at 409.

Though some of the reported text exchanges may be considered disturbing, that is also why they are particularly material in the context of charged offenses. The Sixth Circuit has repeatedly "recognized that probative '[e]vidence is not unfairly prejudicial simply because it is gruesome or disturbing.'" *United States v. Rathburn*, 771 F. App'x 614, 627 (6th Cir. 2019) (quoting *United States v. Boyd*, 640 F.3d 657, 667 (6th Cir. 2011)). For example, in *Rathburn*, the defendant was

3

Case 3:22-cr-00282    Document 321    Filed 04/20/25    Page 3 of 5 PageID #: 2385

charged with wire fraud for misrepresenting that he was providing clean biological specimens to medical professionals. *Id.* at 618-619. The Sixth Circuit held that photographs admitted at trial depicting the unsanitary conditions of the defendant's warehouse, including "an open cooler with several human heads frozen together; . . . a human head and torso in a semi-frozen state; . . . and a pile of dead flies on the floor," withstood Rule 403 analysis because they were relevant to show materiality and for other permissible purposes. *Id.* at 626-27; *see also United States v. Mellies*, 329 F. App'x 592, 600 (6th Cir. 2009) (observing that, although photos of child pornography, "by its very nature, [are] inherently disturbing," they were not unfairly prejudicial because they were "*essential* to proving an element of the charged crime"). Given the highly probative value of the cited evidence to prove materiality, the risk of unfair prejudice does not substantially outweigh its probative value.

In the alternative, the government submits that it should be permitted to ask open-ended questions to its witnesses regarding their recollection of the details of the scandal, the media coverage of the scandal, and the impact of both the defendants' conduct and the coverage of that conduct on the witnesses' assessments of whether they would have done business with Cothren.

Short of either of those options, the government believes that its proposed line of questions minimizes any purported unfair prejudice to Defendants while allowing the government to meet its burden to prove materiality and fraudulent intent. *See* Fed. R. Evid. 611(c) ("Leading questions should not be used on direct examination except as necessary to develop the witness's testimony."); *United States v. DeFiore*, 720 F.2d 757, 764 (2d Cir. 1983) (holding that 611(c) sets forth "words of suggestion, not command"); *United States v. Tyler*, 42 F. App'x 186, 191 (10th Cir. 2002) ("This Rule vests broad discretion in trial courts.").

Respectfully submitted,

ROBERT E. McGUIRE
Acting United States Attorney for the
Middle District of Tennessee

*/s/ Taylor Phillips*
TAYLOR PHILLIPS
Assistant United States Attorney
719 Church Street, Ste 3300
Nashville, Tennessee 37203
Telephone: 615-736-5151

*/s/ John P. Taddei*
JOHN P. TADDEI
BLAKE J. ELLISON
Trial Attorneys
Public Integrity Section, Criminal Division
United States Department of Justice

5

Case 3:22-cr-00282   Document 321   Filed 04/20/25   Page 5 of 5 PageID #: 2387